[Civ. No. 59051. Second Dist., Div. Three. May 28, 1981.]

BEVERLY HILLS FIREMEN'S ASSOCIATION, INC., Plaintiff and Respondent, v.
CITY OF BEVERLY HILLS et al., Defendants and Appellants.

COUNSEL

Burke, Williams & Sorensen and Mark C. Allen, Jr., for Defendants and Appellants.

Memel, Jacobs, Pierno & Gersh, Stanley K. Jacobs and Martin J. Thompson for Plaintiff and Respondent.

OPINION

POTTER, Acting P. J.—The City of Beverly Hills (hereinafter City) and its city council appeal from a judgment granting petitioner Beverly Hills Firemen's Association, Inc. (hereinafter Association) a peremptory writ of mandate commanding the City to (1) recompute the salaries being paid to the members of the Association for the fiscal year ending June 30, 1978, so as to add an additional 1.4 percent salary increase; (2) to adjust such salaries retroactively to reflect the inclusion of said increase; and (3) to pay interest upon all such retroactively adjusted salary payments at the rate of 7 percent per annum from the date on which such payments should first have been made.

A memorandum of understanding (hereinafter MOU) was executed by the City and by the Association pursuant to the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510) in July 1974. The term of this MOU extended through June 30, 1977. It provided automatic pay adjustments for each year of its term equal to the lesser of (1) the "percentage increase in the 'cost of living' as measured by the Consumer Price Index," or (2) "an amount equal to the percentage increase . . . of the arithmetic mean of percentage increases granted to the highest step of the salary range at the entry level position in the Fire Department of the following cities, to wit: Burbank, Culver City, *Inglewood*, Glendale and Santa Monica . . . ." (Italics added.)

The 1974 MOU was submitted to the council of the City, and on July 9, 1974, it adopted its resolution No. 74-R-5098 which recited that the 1974 MOU had been "submitted" to the council and resolved "[t]hat appropriate amendments to the Beverly Hills Municipal Code and/or the City Compensation Plan, as required, be prepared and submitted to the Council for its adoption in order to carry out the purposes and intent of said Memorandum of Understanding. Such documentation shall provide for the administration consistent with the aforesaid provisions of the Memorandum of Understanding."

Salary schedules implementing the adjustment formula were adopted by the City covering the period through June 30, 1976, as to which no

controversy arose. However, when the city staff presented a resolution embodying the proposed salary schedule for the last year covered by the 1974 MOU (July 1, 1976, through June 30, 1977), the Association contested the correctness of the adjustment insofar as it failed to reflect a purported increase which Inglewood firefighters received under the terms of an MOU between that city and its employee association executed May 6, 1976. The Inglewood MOU covered three fiscal years commencing June 20, 1976. It retained the existing salary schedules for the first year and provided an approximate 5 percent increase in the schedule for each of the second and third years. In addition, Inglewood agreed for the full term of the MOU to pay in behalf of the firemen one-half of the employees' contribution to the Public Employees Retirement System (P.E.R.S.) with which Inglewood contracted to pay retirement benefits of its employees. Under such contractual arrangement, Inglewood contributed 26.613 percent of the employee's base salary and each employee contributed 9 percent thereof. The provision of the 1976 Inglewood MOU in this respect was: "Effective July 1, 1976 the City shall pay one half (4.5%) of the employee PERS contribution rate as deferred compensation paid to PERS on account of benefits payable under that retirement system to each employee."

Since this 4.5 percent contribution would otherwise have been deducted from the Inglewood firemen's pay, they thereby received an effective 4.5 percent increase in their periodic paychecks. Moreover, as the Inglewood MOU recited: "It is the City's understanding, as a result of discussions with the Executive Officer of PERS, that the portion of the employee's PERS contribution rate paid for by the City will be treated by PERS as part of the employee's base compensation rate for the purposes of computing retirement benefits for those fire [em]ployees so affected by this provision."

The Association contended that the entire Inglewood 4.5 percent contribution was an "increase" for the purpose of the salary adjustment formula. The City disagreed and refused to recognize any part of the assumption as an increase. The Association's attorney advised the assistant city attorney that rather than commencing suit to enforce the City's obligations, the Association "preferred to attempt to negotiate a solution at the next meet and confer session" at which the succeeding MOU was to be negotiated.

Negotiations with respect to a new MOU for the period July 1, 1977 to June 30, 1979, ensued. These culminated in the execution of a new

MOU on August 12, 1977. During these negotiations, the parties discussed compromising their respective positions relating to the Inglewood assumption of part of the employee's contribution. When an apparent solution was reached, the City staff prepared and submitted a salary adjustment provision which incorporated the provisions of the 1974 MOU in that respect but added footnote 1 as follows: "(If any of the five cities listed above provide for assuming any or all of the employees' contribution to the Public Employees' Retirement System during the term of this Memorandum, such assumption shall be averaged into that city's, or those cities', respective salary percentage increases at the rate of 66-2/3% of each percentage amount assumed.)"

This proposal was accepted by the Association without further discussion or change, and the 1977 MOU incorporating it was executed and submitted to the council for determination.

On August 16, 1977, the city council adopted resolution No. 77-R-5693. This resolution, like its 1974 counterpart, recited that the City's representatives had "submitted" the MOU to the council and directed, in the same language employed with respect to the 1974 MOU: "That appropriate amendments to the Beverly Hills Municipal Code and/or the appropriate Compensation Plan, as required, be prepared and submitted to the Council for its adoption in order to carry out the purposes and intent of said Memoranda of Understanding. Such documentation shall provide for the administration consistent with the aforesaid provisions of the Memoranda of Understanding."

In addition, the resolution stated: "The *provisions* of the attached Memoranda shall be subject to the *effective dates* as specifically set forth in the attached Memoranda, whether retroactive or prospective." (Italics added.)

After adoption of resolution No. 77-R-5693, the City prepared salary schedules in purported compliance with the salary adjustment formula as amended in the 1977 MOU for the pay period July 1, 1977, through June 30, 1978. In doing so, the City took into account the 5 percent increase in the Inglewood pay schedule but did not include 66-2/3 percent of Inglewood's assumption of the employee's contribution as an increase over the previously recognized 1976-1977 Inglewood salaries.

The Association promptly objected to this procedure and demanded that the increase reflect both the assumption and the 5 percent sched-

uled increase. The city attorney responded that the footnote to the 1977 MOU was only applicable if Inglewood further enlarged its assumption or some other designated city initiated such an assumption during the term of the 1977 MOU. This litigation followed.

The matter was submitted upon the verified pleadings, declarations with attached exhibits, extensive memoranda of points and authorities, and brief oral argument. The court made findings of fact and conclusions of law. The findings recited the above facts and added several pertinent findings on disputed matters. Finding No. 6 found that resolution No. 74-R-5098 was "a resolution approving and ratifying the 1974 MOU."

With respect to the 1977 MOU, the court found that agreement thereon was reached between the Association and the City on or about August 12, 1977, and that "[o]n or about August 16, 1977, Respondent City Council, in its capacity as the governing body of Respondent City, duly passed a resolution approving and ratifying the 1977 MOU."

The court construed the 1977 MOU in accordance with the Association's contentions, after quoting the footnote recognizing as salary increases a comparison city's assumption of employees' contributions to P.E.R.S. "at the rate of 66-2/3% of each percentage amount assumed," the findings continued: "15. The foregoing quoted provision of the 1977 MOU was intended by all parties to provide, and does provide, that on and after the approval by the City Council of the 1977 MOU when a comparison city makes a contribution to the employee's share of the Public Employees' Retirement System contribution, when such contribution was first made before the approval of the 1977 MOU two-thirds of such contribution shall be considered as if it were salary in 1977-1978 and 1978-1979, but shall not be considered as if it were salary in 1976-1977. When such contribution is first made after the 1977 Memorandum of Understanding, it shall be considered salary at all times when it is made.

"16. The action of the City of Inglewood described in Finding No. 9[1] was known to the parties at the time of the negotiation, execution and approval of the 1977 MOU. The obtaining of additional benefits in the 1977 MOU by way of the required consideration by Respondent City in

---

[1]Finding No. 9 described the action of Inglewood in assuming 4.5 percent of the firefighters employees' contribution.

the years 1977-1978 and 1978-1979 of such action by the City of Inglewood was a material factor in obtaining petitioner's agreement to the 1977 MOU, and Respondent City is charged with notice and knowledge thereof."

From the foregoing findings the court concluded that the City was required by law to perform the terms of the 1977 MOU and that the provisions of the 1977 MOU required the City to include two-thirds of the 4.5 percent contribution (equal to 3 percent of salary)[2] by the City of Inglewood as a salary increase when calculating the minimum salary increase due the Association members. Judgment was entered accordingly and this appeal followed.

### Contentions

The City contends that: (1) there is no evidence to support the trial court's finding that the city council approved the 1977 MOU, and (2) there is no evidence to support the court's finding that the 1977 MOU requires recognition of the Inglewood assumption of a portion of its employees' contribution to P.E.R.S. as a salary increase.

The Association controverts both of the City's contentions.

### Discussion

*Summary*

Substantial evidence supports the trial court's finding that the 1977 MOU was approved by the city council. Its provisions are therefore binding upon the City. Likewise supported by substantial evidence is the court's finding that the 1977 MOU requires recognition of two-thirds of the Inglewood assumption of its firemen's P.E.R.S. contribution as a salary increase. The judgment must therefore be affirmed.

*The 1977 MOU Was Approved*

█ The 1977 MOU expressly recognizes the effect of Government Code section 3505.1 stating that such memoranda "shall not be binding" and shall be presented "to the governing body or its statutory

---

[2]The addition of a 3 percent Inglewood increase in the calculation pursuant to the adjustment formula results in the 1.4 percent increase in the salary of association members mandated by the judgment.

representative for determination," by stating "[t]his document is not a contract but is a written memorandum prepared pursuant to the requirements of Government Code section 3505.1 for presentation to the City Council for its determination."

The response called for by such a presentation is a determination either that the MOU is approved and shall be effective or that it is not approved, in which event further negotiations to reach an acceptable agreement are in order. A responsive resolution directing preparation of an appropriate compensation plan "to carry out the purposes and intent of" and which is "consistent with the aforesaid provisions of the Memoranda of Understanding" cannot reasonably be construed as anything other than a favorable determination. The statute does not require the use of any specific words to express the council's ratification. A direction to "carry out" an agreement is an appropriate manner in which to express approval.

This interpretation of the resolution is further supported by the reference therein to the "effective dates" of "the provisions of the attached Memoranda."

Extrinsic evidence also supporting this interpretation of the resolution is found in the fact that the council received and acted upon, without taking exception thereto, a later resolution submitted by its staff which refers to the 1977 MOU as having been "adopted by Resolution #77-R-5693." The City is, of course, not bound by the admission of staff employees (cf. *State of California* v. *Haslett Co.* (1975) 45 Cal. App.3d 252, 257 [119 Cal.Rptr. 78]), but that does not mean that the council's tacit acceptance of the staff assertion has no evidentiary value.

We, therefore, conclude that the court's interpretation of resolution No. 77-R-5693 is reasonable in light of all the evidence and that the 1977 MOU was in fact adopted by the city council.

Having been so adopted, the 1977 MOU is binding upon the City. In *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609], our Supreme Court disposed of Glendale's contention that, regardless of approval, an MOU is not binding. The court said (*id.*, at p. 336): " . . . . Section 3505.1, quoted earlier, provides that if agreement is reached it should be reduced to writing and presented to the governing body of the agency for determination. This statutory structure necessarily implies that an

agreement, *once approved by the agency, will be binding.* The very alternative prescribed by the statute—that the memorandum 'shall not be binding' except upon presentation 'to the governing body or its statutory representative *for determination*,' —manifests that *favorable* 'determination' engenders a binding agreement." (Italics in original.)

"Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance? What integrity would be left in government if government itself could attack the integrity of its own agreement? The procedure established by the act would be meaningless if the end-product, a labor-management agreement ratified by the governing body of the agency, were a document that was itself meaningless."

City's reliance upon *Long Beach City Employees Assn., Inc.* v. *City of Long Beach* (1977) 73 Cal.App.3d 273 [140 Cal.Rptr. 675], is misplaced. In that case, Division Two of this district affirmed a judgment after a demurrer was sustained (without leave to amend) to the petition. The petition alleged the execution of a MOU which expressly provided that it would not be effective until its provisions were approved by the city council. The petition further alleged that the "'CITY COUNCIL did not approve'" and that "the MOU in its entirety was read into the minutes of the City Council with the proviso that subsequent approval of its minutes by the council was not to constitute an adoption of the MOU." (*Id.,* at p. 276.) The petitioner in *Long Beach* was not contending that the MOU was approved but rather that the city council had no power to disapprove it. Consequently, the case is neither authority for what constitutes a favorable determination nor for the legal consequences of such a favorable determination.

*The Court's Interpretation of the 1977*
*MOU Is Supported by Substantial Evidence*

It is "the established rule that if the construction of a document turns on the resolution of conflicting extrinsic evidence, the trial court's interpretation will be followed if supported by substantial evidence" (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d at p. 340) and "[i]n light of this rule, [the City], in order to overturn the trial court's interpretation, must demonstrate either that the extrinsic evidence on which the court relied conflicts with any inter-

pretation to which the instrument is reasonably susceptible [citation] or that such evidence does not provide substantial support for the court's interpretation." (*Ibid.*)

■ The 1977 MOU is readily susceptible to the interpretation which was placed upon it by the court. As the result of the City's refusal to recognize the Inglewood assumption as a salary increase for Inglewood firefighters in the 1976-1977 computation, the recognized Inglewood salaries for that fiscal period were simply those shown on the schedule. Consequently, the effect of a recognition of 66-2/3 percent of such assumption in the succeeding fiscal year was an increase in the recognized Inglewood salaries. The language of the amendatory footnote does not require that the assumption be initiated or effected for the first time during the term of the 1977 MOU, only that any of the five comparison cities "provide for assuming" such contribution during such term. Inglewood did provide for such assumption during the 1977-1978 fiscal year, which was included in the term of the 1977 MOU. It was, therefore, entirely consistent with the contract language to treat the assumption during the 1977-1978 period as an increase in the Inglewood salaries.

The extrinsic evidence submitted in the Association's behalf supported this interpretation. The declarations of the Association representatives showed the Association's contention with respect to the 1976-1977 period was that the entire 4.5 percent assumption was an effective salary increase for that year and that this contention was clearly communicated to the City's bargaining representatives. When the City representatives said that the scheduled increase denying recognition to the assumption would be signed or there would be no increase at all, the Association president's reaction as described in his declaration was as follows: " . . . . I stated, in substance, that I would sign the schedule only upon recognition of my protest and the reservation of the firefighters' right to further pursue the issue of the 4-1/2% *Inglewood increase.* She stated, in substance, that this arrangement was acceptable." (Italics added.)

It was thus apparent to the City negotiators that recognition of the Inglewood assumption was a major bargaining point. Furthermore, in the course of such negotiations, the Association attorney recapitulated this position and "further stated, in substance, that the firefighters continued to contend that the City was under a duty to include the 4-1/2% Inglewood increase in all salary calculations." According to this testi-

mony, the context in which the amendatory footnote was negotiated was that of compromising between the Association's contentions with respect to the Inglewood assumption and the City's contentions with respect thereto. The Association's declaration further showed that "[a]t no time during these negotiations did any member of the City's bargaining team make any statement to the effect that the City would not recognize the effective 4-1/2% salary increase received by the firefighters of the City of Inglewood, for purposes of the inclusion of two-thirds of the face amount of such sum with respect to the calculations of the salaries for fiscal year 1977 through 1978."

Such testimony substantially supports the court's finding. The interpretation which the City places upon the footnote gives no effect whatsoever to the Inglewood assumption. According to the City, it was an offer to compromise by adopting the City's prior position with respect thereto. In the absence of any notification that the City intended any such anomalous result, it would be wholly unreasonable for the Association to so construe the City's proposal.

The City is not aided by its reliance upon the rule of construction of contracts stated in Civil Code section 1654, which provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party." This section is correctly construed by the Court of Appeals for the Ninth Circuit in *Department of W. & P.* v. *Okonite-Callender C. Co.* (1950) 181 F.2d 375, 380, where the court cited that section in footnote 3 and said: "Since the record here discloses that the language in controversy was prepared by the City and made a part of its specifications we take it that the presumption mentioned in the statute has been rebutted by the showing that the City prepared the specifications."

The evidence in this case also shows that the City prepared the amendatory footnote.

Nor is the City's position supported by the fact that subsequent to the adoption of the 1977 MOU a salary schedule embodying the City's interpretation was submitted to and approved by the city council. The City of Glendale relied upon a similar action on the part of its council,

arguing "that in enacting Salary Ordinance No. 3936 it attempted to comply with its duty under the memorandum, and that this ordinance cannot be set aside unless it is fraudulent or palpably unreasonable." (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra*, 15 Cal.3d at p. 338.) Rejecting this argument, our Supreme Court said (*id.*, at p. 339): "This argument, however, misses the point; the issue here is not the validity of Ordinance No. 3936, but the sufficiency of that ordinance to fulfill the city's duty under the memorandum. Although the cited cases recognize the broad discretion of a city in interpreting its respective charter's prevailing wage provisions, and although defendant city here would analogize the instant issue with such a prevailing wage case, defendant's position founders on the rock of the *bilateral* nature of the instant memorandum of understanding. We do not probe the city's interpretation and application of a prevailing wage ordinance or even an alleged abuse of discretion by the city in so applying it; we deal here with a mutually agreed covenant, a labor management contract. We know of no case that holds that one party can impose his own interpretation upon a two-party labor-management contract."

The City's interpretation of its contract was found by the trial court to be erroneous. Since that finding is supported by substantial evidence, it is determinative of this appeal.

The judgment appealed from is affirmed.

Cobey, J., and Fratianne, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.